IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Andrea Denise Simpkins, ) | Civil Action No. 8:09-855-MBS-BHH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Michael J. Astrue, ) | **OF MAGISTRATE JUDGE** |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Andrea Denise Simpkins, brought this action pursuant to Section 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. § 1383(c)(3))[2], to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") regarding her claim for supplemental security income benefits ("SSI") under Title XVI of the Social Security Act, as amended (the "Act").

## **RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

The plaintiff was 34 years old on the date she filed her disability application. (R. at 17.) She initially alleged that she became disabled on July 13, 2004, due to a slipped disc in her back, anemia, being suicidal, obesity and severe depression. (R. at 90.) The ALJ found that she has a high school education and past work experience as an inspector and as a fast food worker and shift supervisor. (R. at 17.)

The plaintiff protectively filed an application for SSI on August 20, 2004 (R. at 75-76.) After her application was denied in initial and reconsidered determinations (R. at 52, 53),

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

[2] 42 U.S.C. Section 1383(c)(3) "incorporates the review provisions of 42 U.S.C. § 405(g)." *Melkonyan v. Sullivan*, 501 U.S. 89, 92 (1991).

she requested a hearing before an Administrative Law Judge ("ALJ") (R. at 63). On February 15, 2007, the ALJ conducted a *de novo* hearing at which the plaintiff, her legal counsel, her witness and a vocational expert ("VE") appeared. (R. at 20.) By decision dated April 27, 2007, the ALJ found that the plaintiff was not disabled within the meaning of the Act. (R. at 11.) After the Appeals Council denied the plaintiff's request for review on August 1, 2008 (R. at 1), the ALJ's decision became the Commissioner's final decision for purposes of judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

>   (1) The claimant has not engaged in substantial gainful activity since July 13, 2004, the alleged onset date (20 CFR 416.920(b) and 416.971 *et seq.*).
>
>   (2) The claimant has the following severe impairments: degenerative disc disease and degenerative joint disease of the lumbar spine with radiculopathy to the right lower extremity; neuropathy; morbid obesity; and depression (20 CFR 416.920(c)).
>
>   (3) The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
>   (4) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity of no lifting and/or carrying over 20 pounds occasionally and 10 pounds frequently; no standing and/or walking over four hours in an eight-hour workday; only occasional stooping, twisting, crouching, kneeling, and climbing of stairs and ramps; no crawling, balancing or climbing of ladders or scaffolds; limited to simple, routine tasks; in a supervised environment; and with no required interaction with the public or "team"-type interaction with co-workers.
>
>   (5) The claimant is unable to perform any past relevant work (20 CFR 416.965).
>
>   (6) The claimant was born on November 7, 1969, and was 34 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).

2

(7) The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

(8) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(9) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).

(10) The claimant has not been under a disability, as defined in the Social Security Act, since August 20, 2004, the date the application was filed (20 CFR 416.920(g)).

## **APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Administration's official Listing of Impairments found at 20 C.F.R. Part 4, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. § 416.920. If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.*; *see also Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling (SSR) 82–61, 1975-1982 Soc. Sec. Rep. Serv. 836 (West 1983). The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 1382c(a)(3)(H)(i). He must make a prima facie showing of disability by showing that he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.* at 191-92.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Richardson v. Perales*, 402 U.S. 389 (1971). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing* U.S.C. § 405(g)*; Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

The plaintiff contends that the ALJ erred in failing to find her disabled. Specifically, the plaintiff alleges that the ALJ erred in failing to properly (1) evaluate medical source opinions and (2) assess the plaintiff's residual functional capacity ("RFC"). The Court will address each allegation in turn.

### **I.** **Medical Source Opinions**

The plaintiff first argues that the ALJ erred in not adopting the specific restrictions suggested by her treating physician, Dr. Ty Carter. Administration regulations require that all medical opinions in a case be considered, 20 C.F.R. § 416.927(b). The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *See id.* § 416.927(d)(2); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 858, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro*, 270 F.3d at 178 (*citing Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)).

A "medical opinion" is a "judgment[ ] about the nature and severity of [the claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

5

However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions, but rather, are administrative findings reserved for the Commissioner's determination. SSR 96-5p, 61 Fed. Reg. 34471-01, 34474. Furthermore, even if the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supports the decision. *See Blalock*, 483 F.2d at 775.

Dr. Carter treated the plaintiff from December 2002 through August 2004 for complaints of back pain. (R. at 177-83.) Magnetic resonance imaging of the plaintiff's lumbar spine revealed "extensive" degenerative disc and joint disease with a large herniated disk fragment which completely effaced the nerve roots at L5-S1. (R. at 182, 184.) After six months of treatment, the plaintiff queried Dr. Carter about working. The doctor did not suggest that the plaintiff was disabled from working, but rather, encouraged the idea:

> I feel that she can work as tolerated. . . . The plan at this time is to have the patient work as tolerated. . . . If she gets involved in some vocational rehab[ilitation] for a different job, *such as a sitting job*, I'll give her a statement saying that she needs to be doing *sit down work*.

(R. at 180 (emphases added).) At the plaintiff's next visit a few months later, Dr. Carter opined, "She needs to continue with her vocational rehab[ilitation] and hopefully find a sitting job where she is not doing any heavy lifting *or bending*." (R. at 179 (emphasis added).)

The ALJ stated that he had considered Dr. Carter's statements and had accorded them "significant weight." (R. at 16.) Yet, as the plaintiff points out, the ALJ found that she could "stand and walk for half of the work day." (Pl.'s Br. 13.) Any conflict, however, is of no moment, as the jobs that the ALJ found that the plaintiff could perform are at the "sedentary"[3] level and, thus, are "sitting jobs." (*See* R. at 43 (VE bases his hypothetical

---

[3] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally

(continued...)

6

response on sedentary work).) *See also Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (affirming denial of benefits where "there is no question but that [the ALJ] would have reached the same result notwithstanding his initial error").

The plaintiff also finds fault with the ALJ's decision that she can perform "occasional" (from very little up to one-third of the time) bending, contrary to Dr. Carter's opinion. On the face of the decision, there does not appear to be an issue, as the ALJ does not mention "bending." The problem arises in the Administration's definition of some postures: "*Stooping, kneeling, crouching, and crawling* are progressively more strenuous forms of bending parts of the body, with crawling as a form of locomotion involving bending." SSR 85-15, *in Social Security Reporting Service: Rulings 1983-1991*, at 343, 350 (West 1992) [hereinafter *SSRS*]. Furthermore, the Administration has stated that, "[s]ome stooping (bending the body downward and forward by bending the spine at the waist) is required to do almost any kind of work[.]" *Id. Cf.* SSR 83-14, *in SSRS* 41, 43 ("to perform substantially all of the exertional requirements of most sedentary and light jobs, a person ... would need to stoop only occasionally").

The Court notes that the state agency physicians opined that the plaintiff would be able to perform stooping occasionally. (R. at 212; *see also* R. at 194.) The ALJ, however, acknowledged that, although their conclusions were given "substantial weight," they were "not given the same weight as that of a treating physician." (R. at 15.) An ALJ may confer more weight upon the opinion of a non-treating physician in some circumstances, SSR 96-6p, 61 Fed. Reg. 34466-01, 34468, but if the RFC[4] assessment "conflicts with an opinion

---

[3](...continued)
    and other sedentary criteria are met.

20 C.F.R. § 416.967(a).

[4] The "RFC is an assessment of the individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 61 Fed. Reg. 34474-01, 34475.

7

from a medical source, the adjudicator must explain why the opinion was not adopted," SSR 96-8p, 61 Fed. Reg. 34474-01, 34478; *see also DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) (if the ALJ chooses to discredit the report of the treating physician, he must fully articulate the reasons for doing so). The Court finds that it is proper to remand this case so that the ALJ can explain why he chose to reject this portion of Dr. Carter's opinion.

The plaintiff further points to the report of David Steiner, M.D., who conducted a psychiatric evaluation of the plaintiff in connection with her disability application. The plaintiff told Dr. Steiner that she cried daily; had "sweats" and nausea; wanted to stay home; felt depressed; could not sleep; had gained some 200 pounds due to inactivity; had poor energy, motivation and concentration; and had suicidal ideation. (R. at 185.) In addition, she suffered from feelings of nervousness, shaking and shortness of breath almost daily.

The plaintiff described her daily activities as "staring at the walls," looking at television, cleaning house and cooking. (R. at 186.) After his discussion with the plaintiff, Dr. Steiner concluded that she suffered from major depression, recurrent and severe with psychotic features, and possibly panic disorder. He rated her current GAF[5] at 42. (R. at 187.)

Dr. Steiner believed that the plaintiff's "fairly severe depression" was likely contributing to "her overall level of disability," although her "main" problems were physical. (*Id.*) He added that her "significant depressive symptoms" appeared to be impacting her ability to "function in a work-related environment." (*Id.*) Dr. Steiner recommended to the plaintiff that she get an increased dose of antidepressant and get "definitive treatment" at the county mental health department. (*Id.*)

---

[5] "GAF" – "Global Assessment of Functioning" – ranks psychological, social and occupational functioning on a hypothetical continuum of mental illness ranging from zero to 100. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., text rev. 2000). A GAF score of 41 to 50 indicates "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning[.]" *Id.* at 34.

The plaintiff acknowledges the ALJ's discussion of Dr. Steiner's report (*see* R. at 17), but she complains that the ALJ failed to weigh the doctor's statements or indicate whether they were accepted or rejected. She contends, "Dr. Steiner's assessment was essentially an opinion that the Plaintiff was disabled due to her mental impairments. In addition to finding the Plaintiff to be suffering from severe and recurrent major depression with psychotic features, Dr. Steiner assigned the Plaintiff a GAF score of 42." (Pl.'s Br. 15.)

That the ALJ accepted Dr. Steiner's diagnosis of depression is evident in his finding that the plaintiff suffered from depression which was "severe," i.e., "significantly limits [the claimant's] physical or mental ability to do basic work activities." (*See* R. at 13 (citing 20 C.F.R. § 416.920(c)).) That the ALJ rejected the *severity* of Dr. Steiner's assessment is also clear in the Psychiatric Review Technique ("PRT").[6] The ALJ determined that the plaintiff experienced mild restriction in activities of daily living; moderate difficulties maintaining concentration, persistence or pace and in social functioning; and no extended episodes of decompensation. (R. at 15.)

The ALJ provided substantial evidence to support these findings. He explained that the plaintiff's medical records show that her mental impairment has been managed with medication. (R. at 15.) *Cf. Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (if symptoms are, or can be, reasonably controlled by medication, they may not be considered disabling under the Act). Caregivers have consistently noted that the plaintiff is fully oriented and alert. The plaintiff had not been to the emergency room for treatment, and her only psychiatric hospitalization occurred in 1993.

---

[6] The Commissioner has promulgated a Psychiatric Review Technique ("PRT") for evaluating mental impairments in a disability case. *See* 20 C.F.R. § 416.920a. Under this procedure, the Commissioner must first make clinical findings (i.e., the "A" criteria), as to whether the claimant has a medically determinable mental disorder specified in one of eight diagnostic categories defined in the regulations. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A. Then the Commissioner must measure the severity of any mental disorder found, i.e., its impact on the applicant's ability to work, which is assessed in terms of a prescribed list of functional restrictions associated with mental disorders (i.e., the "B" criteria). 20 C.F.R. § 416.920a(c)(2). The regulations require that the ALJ document application of the PRT in his decision. *Id.* § 416.920a(e).

In August 2003, the plaintiff had gone to the county mental health center, but her case was closed later that year due to lack of follow-up with treatment, indicating to the ALJ that the plaintiff's symptoms were mild. (R. at 15-16 (citing R. at 171-75).) *See Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) (the failure to seek help constitutes a reason for discounting subjective claims). Treatment notes from the plaintiff's primary caregiver contained "few, if any, clinical findings" of her depression. (R. at 17.) As to the Steiner interview in particular, the ALJ wrote: "It is noteworthy that while the claimant reported auditory and visual hallucinations at this consultative examination, a review of the record fails to show that the claimant has reported these severe symptoms to any of her treating physicians, including [her family practitioner]." (*Id.*) In addition, the ALJ's PRT findings are identical to those of the state agency consultants (*see* R. at 206), "highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." SSR 96-6p, 61 Fed. Reg. 34466-01, 34467.

The plaintiff seems to believe that her GAF rating is convertible to a disability finding, declaring, "This score [of 42] is incompatible with sustained work activity." (Pl.'s Br. 15.) But "[w]hile a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002). Further, the GAF score, standing alone, is of little significance to the factfinder, as there is no indication of whether it applies to symptom severity or level of functioning or impairment in reality testing or communication or major impairment in several areas and, if in several areas, which areas, and if these areas impact basic work activities. *See* Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., text rev. 2000) (describing how the scale is to be used, e.g., the score reflecting the worse of symptom severity and functioning level); *see also* 20 C.F.R. § 416.921 (describing what makes an impairment "severe").

The Administration has even cautioned that the GAF scale "does not have a direct correlation to the severity requirements in our mental disorders listings." "Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury," 65 Fed. Reg. 50746-01, 50764-765 (Aug. 21, 2000). Thus, for Social Security disability purposes, a GAF rating is simply another observation which presumably is subsumed into the medical source's final assessment. As the ALJ's evaluation of Dr. Steiner's report is readily evident, the plaintiff has not set forth a reversible error. *See, e.g.*, *Forte v. Barnhart*, 377 F.3d 892, 896 (8th Cir. 2004) ("An arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where ... the deficiency probably had no practical effect on the outcome of the case." (internal citations omitted; alteration in original)); *Reddy v. Commodity Futures Trading Comm'n*, 191 F.3d 109, 125-26 (2nd Cir. 1999) (A reviewing court will not be "'disposed to overturn a sound decision if the agency's path, although not ideally clear, may reasonably be discerned.'" (citation omitted)).

## II.     Residual Functional Capacity

The plaintiff's next set of issues involve the ALJ's RFC findings. She claims that the ALJ erred generally in not explaining how he arrived at the physical restrictions, but the Court disagrees.

Social Security Ruling 96-8p, 61 Fed. Reg. 34474-01, which governs the assessment of RFC, requires the RFC assessment to "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at 34478. The ALJ's decision complies with this mandate. The ALJ discussed the plaintiff's report of minimal daily activities (*see* R. at 14, 17), but concluded that her "self-imposed limitations" were not consistent with either the objective medical evidence or her doctor's opinions (R. at 14).

The ALJ pointed out that the plaintiff's clinical findings were "mild to moderate," and her treatment had been "routine, conservative and limited to medication." (R. at 15.) Dr.

11

Carter had advised the plaintiff to have surgery, but her testimony that she was precluded by anemia and hypertension is not supported by the record. Indeed, her primary care physician, Dr. James Moore, wrote a letter in support of surgery. (*See* R. at 192.)

The ALJ added that prescribed medication levels had remained fairly constant throughout the plaintiff's course of treatment, suggesting "effective management of symptoms." (R. at 15.) *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (if symptoms are, or can be, reasonably controlled by medication, they may not be considered disabling under the Act). And objective clinical findings, such as muscle strength, spasming and neurological deficits, generally did not support pain at a disabling level. *See* SSR 96-8p, 61 Fed. Reg. at 34477 (listing "medical signs" among the "relevant evidence" to be considered when assessing RFC). Also, there is no indication that the plaintiff requested treatment alternatives. *See* SSR 96-7p, 61 Fed. Reg. 34483, 34487 (claimant's persistent attempts to obtain pain relief support allegations of intense symptoms). Finally, the ALJ relied on Dr. Carter's statements (except with respect to bending, as discussed hereinabove) and the opinions of the state agency physicians in formulating his RFC finding. (R. at 15; *see* R. at 194, 211-14 (finding, *inter alia*, that the plaintiff is capable of occasional bending).) *See also* 20 C.F.R. § 416.927(f)(2)(i) (ALJ's must consider the findings of state agency consultants, "experts in Social Security disability evaluation," as opinion evidence). So, while there is a remaining question about the ALJ's rejection of Dr. Carter's bending restriction, the ALJ's RFC analysis does not fail for want of explanation.

The plaintiff next focuses on her ability to sit, complaining that the ALJ did not perform *any* assessment. Although the ALJ did not specifically say that the plaintiff had an unlimited ability to sit, he clearly considered it. The ALJ's RFC finding pointedly states that the plaintiff is limited to standing and/or walking only four hours in an eight-hour day. (R. at 13.) He did not include a "sit/stand option," which would indicate that the plaintiff's ability to sit was somehow limited. And the ALJ gave "significant weight" to Dr. Carter's support

12

for the plaintiff's restriction to a "sitting job."  (R. at 16.)  Finally, the ALJ described the "representative occupations" upon which he relied at step five[7] as "sedentary and unskilled."[8]  (R. at 18.)

The plaintiff points to her testimony that she could "sit for about 10, 15 minutes and I have to try to change positions."  (R. at 28; *see also* R. at 33 ("I can't sit long").)  But the plaintiff also testified that she sat down to wash dishes or to cook and that, for the most part, she was "sitting down or laying down."  (R. at 39.)  Moreover, as discussed above, the ALJ found that the plaintiff's alleged limitations were not supported by either the medical evidence or by the medical opinions, and the Court has found this statement to be substantially supported.

The plaintiff argues that her medical records do support restrictions on her ability to sit, but it would appear that Dr. Carter, an orthopedist who treated her regularly for 20 months, would not have suggested that she have a sitting job if her sitting was limited.  The plaintiff complains again that the ALJ's explanation was inadequate, but the Court finds that his reliance on Dr. Carter's and the state agency experts' opinions to be adequate explanation.  *See Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009) ("'An ALJ's findings are supported by substantial evidence if the ALJ identifies supporting evidence in the record and builds a logical bridge from that evidence to the conclusion.'" (citation omitted)).

---

[7] At step five of the sequential evaluation, the Commissioner bears the burden of providing evidence of a significant number of jobs in the national economy that a claimant could perform.  *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002).  The purpose of bringing in a VE is to assist the ALJ in meeting this requirement. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (citation omitted).

[8] Although the VE indicated that these particular jobs would be precluded by the inability to "stand or sit for more than 10 to 15 minutes intervals," he did not testify that such a limitation would preclude *all* employment.  (R. at 45.)

13

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, the Court cannot conclude that the ALJ's decision to deny benefits was supported by substantial evidence. It is, therefore, recommended, for the foregoing reasons, that the Commissioner's decision be reversed and remanded to the Commissioner under sentence four of 42 U.S.C. Section 405(g) for further proceedings as set forth above. *See Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO RECOMMENDED.

                                                      s/Bruce Howe Hendricks
                                                      United States Magistrate Judge

May 13, 2010
Greenville, South Carolina